PROVIDED TO MARION C.I. ON
5-21-24 FOR MAILING.

U.S. COURT OF APPEALS
RECEIVED
CLERK
MAY 24 2024
ATLANTA, GA

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

Case No. 24-10553-J

---

**COLBURN C.G. KELLY,**
Appellant,

**v.**

**DEPUTY CODY JETT, et al.,**
Appellee(s)

---

On Appeal from the United States District Court
For the Middle District of Florida
Order Granting Defendant's Motion For Summary Judgment and Denial of
Appellant's Motion For Summary Judgment From
Appellant's Amended §1983 Complaint

---

# INITIAL BRIEF OF APPELLANT

Colburn C.G. Kelly, *Pro Se*
DC # J49515
Marion Correctional Institution
P.O. Box 158
Lowell, FL 32663-0158

U.S. COURT OF APPEALS RECEIVED CLERK MAY 24 2024 ATLANTA, GA

# U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

***Colburn C.G. Kelly v. Deputy Cody Jett, et al.,*** Appeal No. **21-10868-CC**

11th Cir. R. 26.1 (enclosed) requires that a Certificate of Interested Persons and Corporate Disclosure Statement must be filed by the Appellant with this Court within 14 days after the date the appeal is docketed in this Court, and must be included within the principal brief filed by any party, and included within any petition, answer, motion or response filed by any party. **You may use this form to fulfill this requirement.** In alphabetical order, with one name per line, please list the trial judge(s), and all attorneys, persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

**(Please type or print legibly).**

| | |
|---|---|
| **Butson, L. Miranda** | **AAG (3.850 Appeal)** |
| **Coffman, Paula** | **Defendant's Post-Conviction Counsel (Felony)** |
| **Collins, R. Timothy** | **3.850 Trial/Post-Conviction Judge (County)** |
| **Duffy, Thomas** | **AAG (Dir Appeal)(Circuit Court)** |
| **Forsythe, Ian** | **Defendant's Counsel** |
| **Harris, M. John, Hon.** | **Fifth District Appellate Judge (3.850 Felony)** |
| **Jay, L. Harvey, Hon.** | **Fifth District Appellate Judge (3.850 Felony)** |
| **Jett, Cody Deputy** | **Defendant** |
| **Lambert, L. Laura** | **District Court Magistrate Judge (§1983)** |
| **Long, Hon.** | **First District Appellate Judge** |
| **Luca, Jonathan, Esq.** | **Felony Trial/Appellate Counsel** |

| | |
|---|---|
| **Michael, A. Lindsay** | **ASA (Felony 2015-CF-01203/01204)** |
| **Moody, Ashley** | **Attorney General** |
| **Morales-Howard, M., Hon** | **District Court Judge Jacksonville (§1983)** |
| **Mr. Murcia-Bustos** | **ASA (3.850 Felony)** |
| **Pratt, Jordan, Hon.** | **Fifth District Appellate Judge (3.850 Felony)** |
| **Reynolds, E. Damarius** | **AAG (3.850 County Appeal)** |
| **Roberts, Hon.** | **First District Appellate Judge (Dir Appeal)** |
| **Rowe, Hon., Lori S.** | **Chief Judge First District** |
| **Skinner, H. John, Hon.** | **Felony Trial Judge** |
| **Smith, John Detective** | **Defendant** |
| **Sutton, Kelli** | **ASA (County 2015-CT-001348)** |
| **Terry, Young Ashley** | **ASA (3.850 Felony)** |
| **Thomas, B.L., Hon.** | **First District Appellate Judge** |
| **Wetherell, Hon.** | **First District Appeal Judge (Dir Appeal)** |
| **Williams, Gregg, Esq.** | **County Misdemeanor Trial Counsel** |
| **Wolf, Hon. James R.** | **1st Dist Ct of Appeal Judge (9.141/3.850 App)** |
| **Woods, E. Steven, Esq.** | **Assistant Attorney General (Dir Appeal)** |

/s/ [signature]

Colburn C.G. Kelly, DC #J49515
Marion Correctional Institution
P.O. Box 158
Lowell, FL 32663-0158

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant (herein referred to as "Appellant" or "Kelly") believes that the issues presented herein are clear from the face of the record and does not request oral argument.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons .......... C1-C2

Statement Regarding Oral Argument .......... iii

Table of Contents .......... v

Table of Citations .......... vii

Statement of Jurisdiction .......... 1

Statement of the Issues .......... 2

Statement of the Case .......... 3

Summary of the Argument .......... 10

Argument .......... 12

**I. Whether *Spencer v. Kemna* controls whether this lawsuit should proceed and whether the District court erred in dismissing Appellant's §1983 on the basis that his Fourth Amendment claims are inextricably intertwined with the factual basis for his DWLSR (misdemeanor) and felony drug convictions and that because Appellant remains in custody on the felony convictions that the court could not reach Appellant's argument that *Heck*, should not apply to this §1983 lawsuit** .......... 12

**B. The District Court's view that the factual basis for the DWLSR and felony drug convictions are inextricably intertwined, does not control whether the §1983 should proceed** .......... 13

**C. The District Court's factual finding that the factual basis for the DWLSR and felony drug convictions are inextricably intertwined is not supported by competent substantial evidence** ........ 22

Argument ........ 28

**II. Whether the district court's "Case Management and Scheduling Order" amounted to the Judge abdicating his position on neutrality by giving unsolicited and strategically beneficial legal advice to the Defendant's, where the Judge essentially became an advocate for the defendants** ........ 28

Argument ........ .33

**III. Whether former trial counsel can be added as a defendant under the theory that although he is a private party and not acting under the color of state law, pursuant to *Spencer v. Kemna*, he could be found liable for a Sixth Amendment violation of ineffective assistance of counsel under *Martinez v. Ryan* for failing to properly challenge a Fourth Amendment violation** ........ 32

Conclusion ........ 34

Oath ........ 34

Certificate of Compliance ........ 35

Certificate of Service ........ 35

Index to Appendices ........ 36

# TABLE OF CITATIONS

**Page**

**FLORIDA STATUTES**

322.34(2)(b) ........ 16

837.021(1) ........ 22

**FLORIDA DISTRICT COURT OF APPEAL CASES**

*Chastine v. Broome*,
629 So.2d 293(Fla. 4th DCA 1993) ........ 31

*Great Am. Ins. Co. v. 200 Island Blvd. Condo. Ass'n*,
153 So.3d 384, 388 (Fla. 3rd DCA 2014) ........ 31

*Shore Mariner Condo. Ass'n v. Antonius*,
722 So.2d 247, 248 (Fla. 2nd DCA 1998) ........ 31

*State v. Perkins*,
760 So.2d 85 (Fla. 2000) ........ 25

*Torres v. Orlick*,
49 Fla. L. Weekly D916 (Fla. 6th DCA 2024) ........ 31

**FLORIDA RULES**

3.850 ........ passim

**UNITED STATES SUPREME COURT**

*Heck v. Humphrey*,
512 U.S. 477 (1994) ........ passim

*Martinez v. Ryan*,
566 U.S. 1, 132 S. Ct. 1309 (2012) ........ 2, 5, 20, 32

*Muhammad v. Close*,
540 U.S. 749 (2004) ........ 19, 20

*Napue v. People of State of Illinois*,
360 U.S. 264, (1959) .......... 26

*Spencer v. Kemna*,
470 U.S. 68 (1985) .......... passim

*Strickland v. Washington*,
466 U.S. 668 (1984) .......... 34

*Terry v. Ohio*,
392 U.S. 1 (1968) .......... 4, 5

*United States v. Agurs*,
427 U.S. 97 (1976) .......... 26

**UNITED STATES CONSTITUTION**

Fourteenth Amendment .......... 12, 31

Fourth Amendment .......... 1, 2, 13, 32

Sixth Amendment .......... passim

**UNITED STATES DISTRICT COURT**

*Domotor v. Wennet*,
630 F. Supp. 2d 1368 (S.D. Fla. 2009) .......... 19, 20

*Dutton v. City of Midwest City*,
2014 U.S. Dist. LEXIS 11940 (W.D. Okla. 2014) .......... 19

**UNITED STATES COURT OF APPEALS**

*Cohen v. Longshore*,
62 F.3d 1311 (10th Cir. 2010) .......... 19

*F.E.B. Corp., v. United States*,
818 F.3d 681 (11th Cir. 2016) .......... 22

*Farrow v. West*,
320 F.3d 1235, 1239 n.3 (11th Cir. 2003) ........ 33, 34

*Harden v. Pataki,*
320 F.3d 1289, 1301-02 (11th Cir. 2003) ........ 17

*Henley v. Payne*, 945 F.3d 1320, 1328 (11th Cir. 2019) ........ 13

*Oviedo Town Ctr. 11, L.L.L.P. v. City of Oviedo*,
759 Fed. Appx. 828, 833 (11th Cir. 2018) ........ 9, 13, 29

*Poventud v. City of New York*,
715 F.3d 57 (2nd Cir. 2013) ........ 21

*Randell v. Johnson*,
227 F.3d 300 (5th Cir. 2000) ........ 17

*Schwab v. Crosby*,
451 F.3d 1308, 1325 (11th Cir. 2006) ........ 22

*Topa v. Melendez,*
739 F. App'x. 516, 519 n.2 (11th Cir. 2018) ........ 14

*Wilson v. Midland County, Texas*,
89 F.4th 446 (5th Cir. 2023) ........ passim

*Moseley v. Lynch*,
2018 U.S. App. LEXIS 30801 (11th Cir. 2018) ........ 10,33

**UNITED STATES CODE**

U.S.C. 28 § 1746 ........ 35

U.S.C. 42 § 1983 ........ passim

U.S.C. 28 § 2254 ........ passim

**FEDERAL RULES**

Fed. R. App. P. 4(a)(1) .......... 1
Fed. R. Civ. P. 56(a) .......... passim
Fed. R. Civ. P. Rule 8(c) .......... 29
11th Cir. R. 26.1 .......... C1, 39
11th Cir. R. 30-1(d) .......... 37, 41
11th Cir. R. 31-3 .......... 37, 41
Fed. R. App. P. 32(a)(5) .......... 36
Fed. R. App. P. 32(a)(6) .......... 36
Fed. R. App. P. 32(a)(7)(B)(i) .......... 36
Fed. R. App. P. 32(f) .......... 36

**OTHER AUTHORITIES**

22 Okla. Stat. 1080, .......... 19

## STATEMENT OF JURISDICTION

This is an appeal from: (1) the United States District Court, Middle District of Florida's, January 18, 2024 order granting Summary Judgment to the Defendants, pursuant to Appellant's Title 42 U.S.C. §1983; and from (2) the U.S. District Court's January 18, 2024 final denial order of the Appellant's corresponding motion for Summary Judgment.

The district court's jurisdiction was founded upon Title 42 U.S.C. §1983. Appellant alleged Fourth and Sixth Amendment constitutional violations in a timely filed Amended §1983 complaint **(Doc.30).**

This Court's jurisdiction is founded upon Federal Rules of Appellate Procedure 4(a)(1), in that Appellant is appealing from a final order denying summary judgment to the Plaintiff in a §1983 case. **(Doc.81).** Appellant's notice of appeal was filed (29) days after the District Court's denial order. **(Doc. 88-1).** This appeal is timely.

## STATEMENT OF THE ISSUES

**i.**

Whether the district court's "Case Management and Scheduling Order" amounted to the Judge abdicating her position on neutrality by giving unsolicited and strategically beneficial legal advice to the Defendant's, where the Judge essentially became an advocate for the defendants

**ii.**

Whether *Spencer v. Kemna*, *infra*, controls whether this lawsuit should proceed and whether the District court erred in dismissing Appellant's §1983 on the basis that his Fourth Amendment claims are inextricably intertwined with the factual basis for his DWLSR (misdemeanor) and felony drug convictions and that because Appellant remains in custody on the felony convictions that the court could not reach Appellant's argument that *Heck*, *infra*, should not apply to this §1983 lawsuit.

**iii.**

Whether trial counsel can be added as a defendant under the theory that although he is a private party and not acting under the color of state law. Pursuant to *Spencer v. Kemna*, *infra*, he may be found liable for a Sixth Amendment violation of ineffective assistance of counsel under *Martinez v. Ryan*, *infra*, for failing to properly challenge a Fourth Amendment violation.

## STATEMENT OF THE CASE

### (i) Course of the State and Federal Court Proceedings.

Colburn C.G. Kelly, (appellant) presently an incarcerated individual in the State of Florida, was originally charged by Information on August 22nd, 2015, with DWLSR (Driving While License Suspended or Revoked). **(Doc 67-3, pg.1)(Appendix D).** Appellant was adjudicated guilty in Clay County case number 2015-CT-1348 and sentenced to serve (2) days in the county jail and was released on ROR.

On September 2nd, 2015, Appellant was arrested for drug trafficking, pursuant to an arrest warrant for drug contraband found as a result of a search warrant for the rental car that Appellant was driving on August 22nd, 2015. **(Doc. 30 at 7)**. After being re-arrested on September 2nd, 2015, Appellant remained in the Clay County jail for (16) months pending the resolution of the misdemeanor DWLSR charge in case # 2015-CT-1348 and felony cases for Trafficking in Heroin, case numbers 2015-CF-1203/1204. **(Doc.30 at 7)**.

The misdemeanor and felony cases were never consolidated. Appellant was prosecuted separately for the misdemeanors and felonies. Appellant hired trial counsel Gregg Williams for the DWLSR **(Doc 67-3, pg.6)** and he filed a motion to suppress. **(Appendix E).** A hearing was held on October 5th, 2015 in case # 2015-

CT-1348. However, the "issue" in Appellant's §1983 complaint was not litigated in either of the motions to suppress or evidentiary hearings during the trial process, in the misdemeanor or felony cases. **(Doc.30 at 8).**

On October 5th, 2015, after being sentenced to (2) days time served on the DWLSR charge. Appellant subsequently filed a *pro-se* Supplemental and Amended Rule 3.850 motion for post-conviction relief raising (3) issues. **(Doc 4-9).** On or about October 2017, Appellant hired post-conviction counsel Brian Crick, Esq. to represent him at the evidentiary hearing originally scheduled in October of 2017. Counsel Crick moved for a continuance to research and present the issue alleged in Appellant's §1983 complaint. Counsel orally raised the issue at the March 22nd, 2018 evidentiary hearing, that Deputy Jett unlawfully exceeded the time needed for the *Terry*[1] stop and arrested Appellant prior to acquiring probable cause. **(Appendix I).**

Almost 2 ½ years after the evidentiary held on March 22nd, 2018, the trial court denied the motion on June 24th, 2020. **(Appendix K).** The trial court found that the defacto arrest ground was untimely since it was raised outside the two-year rule 3.850 window. On the merits, Judge Timothy Collins also ruled that "the court has nothing before it to adequately explain what occurred between Defendant's initial

[1] *Terry v. Ohio*, 392 U.S. 1 (1968)

stop and defendant's arrest. There was no specific evidence or testimony presented to explain whether the law enforcement officers acted diligently or not … Speculation is insufficient to show that Williams' failure to address Defendant's detention in the motion to suppress was ineffective." **(Appendix K, pg.7, 8).**

Appellant timely appealed to the Clay County Circuit Court. However, the circuit court no longer had jurisdiction to hear appeals from decisions from the county courts. The Clay County circuit court then transferred jurisdiction to the First District Court of Appeal and on November 12th, 2021, the First District, ("1st DCA") per curiam affirmed the trial court's decision. **(Appendix M)**. With nowhere else to obtain further review in case number 2015-CT-1348 in the state court, Appellant filed a §1983 complaint (1) alleging that Deputy Jett effected a defacto arrest because he exceeded the time needed for the *Terry* stop and Detective Smith unlawfully arrested Appellant. (2) Trial counsel Gregg Williams violated Appellant's Sixth Amendment right to counsel when he provided ineffective assistance when he failed to challenge a defacto arrest and that this issue can be heard under *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309 (2012). **(Doc.30 at 4, 9)**; **(Doc.1 at 30)**.

On January 18, 2024, the Hon. U.S. District Court Judge Marcia Morales Howard issued an order granting Defendant's motion summary judgment and

denying Appellant's Amended Motion for Summary Judgment with Signed Oath. **(Doc.81)**.

On February 16th, 2024, Appellant filed in the Middle District of Jacksonville his "Notice of Appeal" requesting an appeal of: (1) the January 18, 2024 order of the U.S. District Court granting Defendant's Motion for Summary judgment and denying Appellant's motion for summary judgment. **(Doc.85)**.

Appellant through counsel Paula Coffman, filed Rule 3.850 motions for post-conviction relief in his felony cases, arguing that counsel was ineffective for failing to (1) adequately argue in the suppression motion that Kelly's statements on August 22, 2015 were involuntary and induced by threats and promises of leniency; (2) obtain a judicial determination on the issue of whether Kelly's statements were coerced; (3) argue that Kelly's detention constituted an unlawful de facto arrest; and (4) argue that the search warrant affidavit was defective. **(Doc. 67-2 at 1-19)**.[2] After an evidentiary hearing in which Kelly and his former counsel testified, **(id at 23-80)** the court denied the Rule 3.850 motion on December 9. 2020. **(id. at 1-19)**.

[2] As of the date of this Initial Brief, Kelly's appeal of the denial of his Rule 3.850 motion in the felony cases has been affirmed and rehearing denied. See State of Florida v. Colburn Clifton Gooden Kelly, Nos. 2015-CF-1203 and 2015-CF-1204. Florida Fifth District Court of Appeal case number 5D23-0930.

**(ii) Statement of the facts**

On August 22nd, 2015, Deputy Jett received dispatched information (originally from an anonymous caller) that alleged that Heather McDonald (Appellant's girlfriend and baby mama) had an active warrant for violation of probation on a heroin possession charge, and that she would be in a red rental car (driven by a black male possessing a firearm and storing heroin inside the car) and that they would be arriving at a McDonalds on Blanding Blvd. **(Doc.30 at 10)**.

Deputy Jett then arrived at the McDonalds and observed a vehicle matching the description. **(Doc.1-1 at 8)**. Jett then observed Heather standing outside the vehicle on the passenger side. He also saw Appellant sitting in the driver's seat talking to another individual later identified as Brandon Allison. **(Doc.30 at 12)**. As Jett walked toward the vehicle, Appellant and Heather were walking toward the McDonald's entrance. **(Doc.30 at 5)**. When Jett positively identified Heather, he asked Heather and Appellant to halt, keep their hands out of their pockets, turn around come back to him and sit on the curb. Both Appellant and Heather complied. **id at 5.** After Jett started asking Heather if she was Heather, she argued with Jett and after about (10) second she got up and ran. She made it about fifteen to twenty feet before Jett caught her and tackler her to the grown. **(Doc.30 at 5-6;**

**1-1 at 13**). At the motion to suppress hearing, Jett stated that "While trying to restrain Heather as well as get on the radio to get units to assist me, I saw the defendant reaching in his pockets. He had both hands actually in his pockets. He had both hands actually in his pockets at that time. So due to the fact the caller said he usually has a gun on him and for my safety, anybody digging in their pockets when something like that is going on is an extreme safety risk to me. (**Doc.30 at 6; Doc. 1-1 at 13**). Deputy Jett then pulled out his gun and pointed it at Appellant and order him to show his hands, which Appellant complied. (**Doc.30 at 6; Doc. 1-2 at 56**). Deputy Jett had his firearm drawn until backup officers arrived. (**Doc.30 at 6**). Deputy Jett Unit Id# 7340, arrived on scene at 18:05, and radioed that he had taken Appellant into custody at 18:09 and Heather at 18:10. (**Doc. 1-3 at 7-8; Doc. 1-7 at 6**). Jett then placed Heather in the back of a patrol car and placed handcuffs on Appellant and told him to sit back down on the curb. (**Doc.30 at 6**). Appellant remained seated for (42) minutes until Det. Guzeman and Det. Smith, Employee ID# 6788 arrived on scene at 18:51 and arrested Appellant at 18:59 for DWLSR. (**Doc.30 at 6-7; Doc. 1-3 at7**). Det. Smith testified that he did not have prior knowledge of Appellant's driving status and identified Appellant by his Florida Identification card that was allegedly found inside a Nike Box in the backseat of the red rental vehicle. (**Doc.30 at 6-7; Docs. 1-1; 1-2 at 24; 1-5 at 3**). Det. Smith's basis for arresting Appellant for DWLSR was that he allegedly saw plaintiff

driving earlier in the day on August 22nd, 2015, in the area of Old Jennings Rd and Rainbow Rd. **(Doc.30 at 6-7)**.

After Deputy Jett placed Appellant in handcuffs he did not conduct any further investigation into the initial reasons for why he detained Appellant. He did not conduct a pat-down, nor did he ask for identification, nor did he ask Appellant if he had any guns-or drugs. He left Appellant seated on the curb for (42) minutes until narcotics investigators Detective Smith and Detective Guzeman arrived on scene. **(Doc.30 at 6-7)**. Detective Smith did not communicate by fellow officer rule to Deputy Jett that he needed him to detain Kelly for DWLSR based on Detective Smith allegedly witnessing Kelly driving earlier in the day. **(Doc.30 at 7; Doc. 1-1 at 27)**.

**(iii) Statement of the standard of review**

Issue one and two will be reviewed under a *de novo* review. "The appellate court reviews the grant or denial of a motion for summary judgment de novo. In so doing, the appellate court draws all inferences and review all evidence in the light most favorable to the non-moving party. The appellate court will affirm if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The presence of cross motions does not affect the appellate court's standard of review." *Oviedo Town Ctr. 11, L.L.L.P. v. City of Oviedo*, 759 Fed. Appx. 828, 833 (11th Cir. 2018).

Issue three will also be reviewed de novo. See *Moseley v. Lynch*, 2018 U.S. App. LEXIS 30801 at LEXIS 3 (11th Cir. 2018) ("An appellate court reviews de novo a district court's order granting a motion to dismiss.").

## SUMMARY OF THE ARGUMENT

### i.

The District Court erred in dismissing Appellant's §1983 on the basis that his felony cases are inextricably intertwined with the factual basis for his misdemeanor DWLSR because (a) Detective Jonathan Smith unquestionably made two willful, inconsistent and contradictory statements under oath concerning his knowledge of Kelly's license status, which on the one hand if his October 5th, 2015 evidentiary hearing testimony is believed, then those facts would support the District Court's finding that the cases are inextricably intertwined. (b) On the other hand if Detective Jonathan Smith's June 9th, 2016 evidentiary hearing is believed, then the fact that Detective Smith had prior knowledge of Appellant's license status at the time that he witnessed Kelly driving earlier in the day would support that the crime of DWLSR occurred at a different time and location independent of the felony cases. Thus, the DLWSR and felony cases would not be inextricably intertwined. (c) Because Detective Smith made two (2) contradictory statements

under oath and under cross-examination, the District Court's determination that the cases are inextricably intertwined is not supported by competent substantial evidence, because when there are (2) lies, neither one can be believed.

The District Court further erred in finding that *Heck* bars Kelly because he is still in custody on his felony convictions. Also that because his cases are inextricably intertwined, if the §1983 were to proceed it would invalidate the felony convictions. *Spencer's* dictum concurrence allows for this Court to rule that because it is clear that Kelly is out of custody on the DWLSR conviction, he could never under any set of circumstances, utilize a §2254 forum to attack the DWLSR conviction after exhausting his State Court post-conviction remedies.

**ii.**

The District Court's "Case Management and Scheduling Order" amounted to the judge becoming an advocate for the Defendants by providing unsolicited and strategically beneficial legal advice to the Defendants. When Judge Marcia Morales issued the Case Management and Scheduling Order, the order stated "To progress the litigation, the following deadlines shall apply … File any dispositive motion, including a motion raising qualified immunity no later than June 13th, 2023." This statement in the order provided an unsolicited "tip" that put the Defendants on notice of the specific affirmative defense of qualified immunity.

This "tip" violated Appellant's Due Process rights under the Fourteenth Amendment.

**iii.**

The District Court erred in dismissing former trial counsel Gregg Williams as a defendant. If *Spencer v. Kemna* controls the facts of this case, then despite Gregg Williams' status as a private-actor, he could be held liable under a judicially created exception for providing ineffective assistance of counsel for failing to properly litigate a Fourth Amendment constitutional violation against Kelly by law enforcement.

## ARGUMENT AND CITATIONS OF AUTHORITY

**i.**

***Spencer* controls whether this lawsuit should proceed and whether the District Court erred in dismissing Appellant's §1983 on the basis that his Fourth Amendment claims are inextricably intertwined with the factual basis for his DWLSR (misdemeanor) and felony drug convictions and that because Appellant remains in custody on the felony convictions that the court could not reach Appellant's argument that *Heck* should not apply to this §1983 lawsuit**

**Standard of review:**

"The appellate court reviews the grant or denial of a motion for summary judgment de novo. In so doing, the appellate court draws all inferences and

review all evidence in the light most favorable to the non-moving party. The appellate court will affirm if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The presence of cross motions does not affect the appellate court's standard of review." *Oviedo Town Ctr. 11, L.L.L.P. v. City of Oviedo*, 759 Fed. Appx. 828, 833 (11th Cir. 2018)

**B. The District Court's view that the factual basis for the DWLSR and felony drug convictions are inextricably intertwined, does not control whether the §1983 should proceed**

The District Court found that:

> "Kelly's Fourth Amendment claims in this §1983 lawsuit are inextricably intertwined with the factual basis for his DWLSR and felony drug convictions. Though Kelly argues that he is only challenging his unlawful arrest for DWLSR and not his felony drug adjudications, the Court disagrees that such a division is possible for Heck purposes as the DWLSR conviction is derived from the same common nucleus of operative facts underlying Kelly's drug convictions." … "That his DWLSR arrest and felony drug charges were adjudicated in separate state court proceedings rather than consolidated does not change the Court's analysis under Heck." **(Doc.81. at 20).**

Kelly first argues that even if the factual basis for the DWLSR and felony drug convictions are inextricably intertwined, [which he does not concede] this factor is not the dispositive fact in determining whether the §1983 should proceed. The District Court relies on *Henley v. Payne*, 945 F.3d 1320, 1328 (11th cir. 2019),

wherein this court held that "Heck has no application if the plaintiff has not been convicted of an offense that derives from common nucleus of operative fact with the offense underlying his §1983 claim." The District Court further relied on *Heck's* holding that "[I]f the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."). *Heck*, 512 U.S. at 487.

The District Court refused to reach Kelly's argument that *Heck* should not apply because the fact that the DWLSR case and the felony drug convictions are inextricably intertwined, the custody issue in *Topa*[3] is not implicated and even though he has completed his sentence for the DWLSR conviction, he remains in custody on the felony drug convictions. (**Doc.81, p.20, n.15**).

Kelly respectfully argues that the District Court's finding that the DWLSR and felony drug convictions are inextricably intertwined, is not the dispositive factor in determining whether the §1983 should proceed. Kelly also respectfully argues that the District Court's finding that because Kelly is still incarcerated on the felony case in 2015-CF-1203, that *Topa's* custody issue is not implicated is

[3] *Topa v. Melendez*, 739 F. App'x 516, 519 n.2 (11th Cir. 2018) ("A circuit split has developed regarding the application of Heck to situations where a claimant, who may no longer bring a habeas action, asserts a §1983 complaint attacking a sentence or conviction. This Circuit has not definitively answered the question.") (internal citations and quotation marks omitted).

wrong and here's why. The dispositive factor is that Kelly is not in custody on the DWLSR, period. Because Kelly was sentenced to (2) days time served and he has EOS'd from that conviction and sentence, he qualifies under *Kemna*, because he could never obtain federal review.

The *Spencer* majority's dictum, *infra*, says that Kelly can attack **THE CONVICTION** that he no longer is in custody for. Nowhere in the *Spencer* majority's dictum did they mention any stipulation that if there are two cases arising out of the same set of derivative facts or if there are two cases that are inextricably intertwined, that it would preclude Appellant from attacking **THE CONVICTION** that he is out of custody on. (emphasis added). Justice Souter, O'Conner, Ginsburg, Breyer and Stevens all agreed that if a §1983 is filed attacking a conviction or fine, it should be allowed to proceed. See *Spencer v. Kemna*, 523 U.S. 1, 19-22 (1998) (Souter) ("The better view, then is that a former prisoner, no longer "in custody," may bring a 1983 action establishing the unconstitutionality of a conviction or confinement without being to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy."); (Ginsburg) (Originally joining the Court's opinion in *Heck*, but coming to agree with Justice Souter's reasoning that "Individuals without recourse to the habeas statute because they are not 'in custody' [people merely fined or whose sentences have been fully served, for example] fit within 1983's

broad reach."); (Stevens) ("Given the Court's holding that Petitioner does not have a remedy under the habeas statute, it is perfectly clear, as Justice Souter explains, that he may bring an action under 42 U.S.C. §1983."). The best that ever done it [Supreme Court Justices] said these things. Kelly would never have initiated his §1983 action without _Spencer's_ guidance.

After Judge Morales said that consolidation doesn't matter, **(Doc.88-2, pg.20)** Kelly has pondered some more on the consolidation issue and argues that regardless of whether the two cases were consolidated, federal habeas review would still never have been available. With consolidation, Appellant would have been sentenced to (60) days time served, which under Florida law a violation of DWLSR under F.S. 322.34(2)(b) carried a statutory maximum of (60) days. Defendant would have been sentenced to the DWLSR in December of 2016 at the same time as in case 2015-CF-1203. Additionally, if either the State or Kelly had consolidated both cases and if Kelly would have direct appealed both cases together, this would not change the fact that Defendant would have been out of custody in 2015 or 2016 on the DWLSR. The only date that would have changed was the expiration of the (2) year date in which to file a Rule 3.850 motion in case 2015-CT-1348. Appellant would never have had an opportunity for a "federal forum" to attack any constitutional claims after the conclusion or exhaustion of his state court remedies on the DWLSR. On the other hand, Appellant is still in

custody on the felony convictions and has a "federal forum" available to him for those convictions in the form of a §2254 that he intends on using in the near future.

A new panel of the Fifth Circuit Court of Appeals in *Wilson v. Midland County, Texas*, 89 F.4th 446 (5th Cir. 2023), has recently stated that "they doubt the universality of *Heck's* favorable-termination requirement." *Wilson* at 11. Were it not bound by circuit precedent in *Randell v. Johnson*, 227 F.3d 300 (5th Cir. 2000), the new panel would have joined the majority and the split would be 7-4. The Fifth Circuit also concluded that the "current post-*Spencer* circuit split is 6-5 in favor of holding that *Heck* does not bar a §1983 claim when the plaintiff is not in custody. In n.66, the court highlighted the Eleventh Circuit's position in *Harden v. Pataki*, 320 F.3d 1289, 1301-02 (11th Cir. 2003) as being in favor of relaxing *Heck* for non-custodial plaintiffs. *Wilson* at 11.

In 2001, a jury in Midland County, Texas convicted Erma Wilson of cocaine possession. Police officers said they found cocaine on the ground near where Wilson had been standing with friends. Erma claimed it was not hers. Officers told her she would be released if she told them who the cocaine belonged to. She said she didn't know. She was arrested for possession, she rejected pleas deals, went to trial, was convicted, and received an eight-year suspended sentence. Wilson appealed, arguing the trial court erred in denying her motion to suppress and that the evidence was legally and factually insufficient to support her conviction. The

court of appeals affirmed across the board, and Wilson appealed no further, nor did she seek state or federal habeas relief. *Wilson* at 2-5.

While Wilson's case was tried and appealed, Weldon "Ralph" Petty Jr. was working both as a Midland County prosecutor and as a law clerk for the Midland County district judge[s]. … As an assistant district attorney, Petty worked on cases at all stages of prosecution. The same was true of his work on the other side of the bench. For instance, Petty was responsible for opposing habeas corpus petitions as an assistant district attorney and for working on habeas corpus rulings as a law clerk. Petty worked on these conflicting roles from 2001-2014, and again in 2017 and 2018. Over his career, Petty is alleged to have been both the lead prosecutor and the law clerk on more than 300 cases. *Wilson* at 2-5. The Supreme Court of Texas concluded that Petty had engaged in professional misconduct and canceled Petty's law license and barred him from the practice of law in Texas. The story received national attention in 2021 when a death row prisoner named Clinton Lee Young successfully obtained habeas relief on the grounds that Petty had worked directly on both sides. Wilson never received notification that she had been affected by Petty's conflict of interest. She only learned of Petty's role in her case 20 years later when the news media began to cover Young's habeas petition, long after she completed her suspended sentence. *Wilson at 2-5.*

The Fifth Circuit ultimately found that "although Wilson suffered the fallout of a criminal justice system that offended the gravest notions of fundamental fairness, and that although she seeks accountability for unconstitutional wrongdoing that upended her life, only the *en banc* court (or the Supreme Court given the entrenched circuit split) can overturn circuit precedent." *Wilson* at 13.

Based on Appellant's research, as it stands now, this Court is the only circuit court that has not expressly ruled on whether *Heck* applies or not to a case where a **CONVICTION** would be invalidated under the *Spencer* rationale. As it stands now, the circuit split is 6-4 in favor of *Spencer's* "plurality patchwork." See *Domotor v. Wennet*, 630 F.Supp.2d 1368 (S.D. Fla. 2009); also Muhammad v. Close, 540 U.S. 749, 751, 124 S. Ct. 1303, 158 L. Ed. 2d 32 (2004); *Cohen v. Longshore*, 62 F.3d 1311, 1315 (10th Cir. 2010).

However, the District Court in *Dutton v. City of Midwest City*, 2014 U.S. Dist. LEXIS 11940 (W.D. Okla. 2014) found that ("neither Spencer nor Cohen appears to have addressed the precise circumstance present here-where an available means exists under state law for challenging the conviction involved, regardless of the availability of a federal habeas remedy or of Mr. Dutton's custodial status. He has an available state remedy, through the Oklahoma Uniform Post-Conviction Procedure Act, 22 Okla. Stat. 1080, and has apparently invoked that precise remedy.6 The Spencer concurrence's concern with the impossibility of

satisfying the favorable termination requirement is thus not present here. Further, recognizing the impact of the available state procedure seems consistent with the underlying purpose served by the Heck rule, of preserving limitations on the availability of habeas remedies, i.e. exhaustion of state remedies. *See* Muhammad v. Close, 540 U.S. 749 (2004))."

Kelly attempted to obtain the "favorable termination" requirement in state court by utilizing the available state post-conviction vehicle of Fla. R. Crim. P. 3.850. However, when the state court post-conviction vehicle did not vindicate Kelly's constitutional rights because Kelly procedurally defaulted the defacto arrest claim by untimely filing it and where he did not have post-conviction counsel at the time he initiated his post-conviction motion, and Kelly wanted to file a §2254 habeas corpus but could not, he was without the "federal forum" to raise his *Martinez, infra,* constitutional claim.

Although, the Court found in *Domotor v. Wennet*, 630 F. Supp. 2d 1368 (S.D. Fla. 2009) that where habeas is unavailable, *Heck* applies if there is "another route" or "available remedy" for a plaintiff to seek relief from his conviction, this reasoning is inconsistent with the *Spencer* concurrence. Justice RBG clearly stated that "individuals without recourse to the **habeas** statute because they are not in custody fits within §1983's broad reach." *Spencer* at 21. (emphasis added). In other words habeas recourse is only available to (1) individuals who have a

conviction and sentence long enough for their body to be in physical custody or on supervision; and (2) they would have to have timely exhausted state court remedies in order to file a §2254 petition. Moreover, if the United States Supreme Court were to approve of the *Spencer* concurrence, they would at a minimum apply the state exhaustion principles of §2254 as a prerequisite to the utilizing §1983 in this manner.

The *Domotor's* court rationale of "another route" or "other available remedy" is a modest dichotomy of Justice Souter's pronouncement. Justice Souter did not specifically say that there must be a **STATE** court remedy, he said that "some **FEDERAL** remedy … must be available. See *Poventud v. City of New York*, 715 F.3d 57 (2nd Cir. 2013) (adopting Justice Souter's dicta and holding that "Heck does not apply to a Petitioner no longer in custody, even where he stayed his §1983 proceeding pending the outcome of his state court motion to invalidate his guilty plea.").

Appellant argues that even if the DWLSR and the felony cases are inextricably intertwined, the §1983 can proceed because the dictum concurrence in *Spencer* clearly stated that if the Plaintiff is without access to the §2254 habeas statute, he can attack his out-of-custody conviction under §1983.

Based on *Spencer's* concurrence, this Court should side with the majority in the entrenched circuit split and relax *Heck's* "favorable termination" requirement

for persons not in-custody on the conviction they are attacking. See *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) ("there is dicta … and there is Supreme Court dicta.'); *F.E.B. Corp., v. United States*, 818 F.3d 681 (11th Cir. 2016) ("We have consistently recognized that dicta from the Supreme Court is not something to be lightly cast aside, but rather is of considerable persuasive value.").

**C. The District Court's factual finding that the factual basis for the DWLSR and felony drug convictions are inextricably intertwined is not supported by competent substantial evidence**

**ARE THE DWLSR AND FELONY CASES INEXTRICABLY INTERTWINED?**

As stated, *supra*, Appellant is not conceding that the factual basis underlying both cases are inextricably intertwined. In regard to the facts underlying the basis for the DWLSR, the government has a glaring conundrum. Under F.S. 837.021(1) Perjury by contradictory statements, it states "whoever, in one or more official proceedings, willfully makes two or more material statements under oath which contradict each other, commits a felony of the third degree."

Detective Jonathan Smith unquestionably made two willful, inconsistent and contradictory statements under oath concerning his knowledge of Kelly's license status. Smith testified under oath at the October 5th, 2015 evidentiary hearing to the following:

Q. Did you follow behind the defendant for a period of time?

A. Yes I did.

Q. About how long would you say you followed him?

A. I believe about 2-3 minutes.

Q. Okay. And at that point, what did you do?

A. Once he turned into a neighborhood, I broke off my surveillance of him.

Q. Okay. Upon arriving at the McDonalds, were you able to obtain the defendant's information?

A. I was.

Q. And did you check that information thru NCIC?

A. I did.

Q. And were you able to determine whether or not the defendant's license was suspended?

A. It indicated it was suspended.

**(Doc.67-4 at 157)**

Q. Okay. So you're stating that you saw Mr. Colburn driving after you actually showed up at the McDonald's, correct?

A. I saw Colburn Kelly driving prior to my arrival at McDonalds.

Q. **Okay. So did that – was that the reason for any alarm for you, did you know that his license was bad or not?**

A. **No, I did not.**

In direct contradiction, Detective Smith, while under oath at the motion to suppress hearing in 2015-CF-1203 on June 9, 2016, almost a year after the incident stated:

A. I witnessed Mr. Kelly driving onto the main road, talking very animated, with his arms flailing a little bit. I followed him on surveillance for a short period of time. And so he turned off into a neighborhood and I stopped my observation of him.

Q. Now prior to your investigation of Mr. Kelly, did you happen to know his driving status?

A. Yes.

Q. **Okay. And what was his driving status?**

A. **I knew that his driver's license was suspended or revoked. …**

**(Doc.67-4 at 158)**

Q. Okay. And you are the actual affiant who arrested Mr. Kelly for driving while license suspended, correct?

A. Correct

Q. **Okay. And that was based on you prior observing him driving the vehicle with prior knowledge that his license was suspended?**

A Yes.

**(Doc.67-4 at 159) (emphasis added)**

If and when Detective Smith actually ran Mr. Kelly's information through NCIC is a material fact in determining the time in which Detective Smith gained probable cause for the arrest for DWLSR. The CAD report shows that Detective

Smith ran a NCIC request at 18:54 hrs. (**Doc.67-4, L.27**). Furthermore, in the Affidavit for Arrest authored by Detective Smith, he attested that Mr. Kelly was identified by his Florida ID card which was allegedly located inside the rental vehicle within a Nike shoe box and the vehicle was not searched until after Mr. Kelly had been detained by Deputy Jett and arrested by Detective Smith. (**Appendix C**). In a prosecution for DWLSR, the essential evidence consists of the officer's discovery at the time of arrest. When the stop is tainted, so is the evidence. See *State v. Perkins*, 760 So.2d 85 (Fla. 2000) (holding, the identification of a defendant, his name and driving record obtained after an unlawful stop is suppressible.).

If Detective Smith was conducting an independent controlled buy[4] with Kelly and witnessed Kelly driving earlier in the day and knew his license was suspended at that time and he subsequently tells the felony judge that he had prior knowledge of Kelly's suspended license status, this fact would support an argument that Detective Smith's factual basis for the probable cause for DWLSR did not derive from the same operative facts as Deputy Jett's, who is the officer that detained Kelly and placed him in handcuffs based on an anonymous tip. Moreover, District Court Judge Marcia Morales highlighted felony Judge

[4] Kelly was never arrested on any sales charges, nor was an information ever filed.

Skinner's heavy reliance on Detective Smith's alleged prior knowledge of Kelly's license status as probable cause for arrest to detain Kelly for DWLSR upon his immediate arrival on scene. **(Doc.88-2 at 10)** citing **(Doc.67-3 at 45-48)**.

> Judge Skinner 6/9/2015:
>
> "On August 22, 2015, Defendant was the target of a narcotics investigation and Detective Smith observed Defendant participate in a controlled narcotics purchase. After the purchase, Detective Smith observed drive away, with a white female passenger, in a red Hyundai sedan with an Illinois tag. At that time, **Detective Smith was aware that Defendant's driver's license was suspended or revoked.** Detective Smith however did not stop or arrest defendant."

**(Doc.67-3 at 43)**.

The conundrum the **STATE** government faced and is currently facing is that they had to pick which lie was their favorite and which lie was the most convenient for the arguments at both motion to suppress hearings and which lie they prefer to use now. (emphasis added). See *Napue v. People of State of Illinois*, 360 U.S. 264, (1959) ("The principle that a state may not knowingly use false evidence including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness."); see also *United States v. Agurs*, 427 U.S. 97 (1976) ("The false evidence is material if there is any reasonable possibility that the false testimony could have affected the judgment of the jury.").

There is no doubt that Detective Smith's alleged prior knowledge of Kelly's license status affected felony judge Skinner's probable cause decision. No court thus far has even in the slightest bit, memorialized or acknowledged the inconsistency in the statements let alone state whether they are material. One cannot know which statement is true because only one can be true. Can truth be gleaned from this last statement? Detective Smith does not have the luxury to try and establish probable cause through crookery and then rely on the State Courts to kick the can down the road and ask the Federal Courts to be his GOFERS by applying a deferential standard of review. If this Court continues the State Court's rubber stamp game to these contradictory statements, then Appellant will never in this life have his constitutional right to Due Process.

As the Fifth circuit recently memorialized for *Wilson*, "that she suffered the fallout of a criminal justice system that offended the gravest notions of fundamental fairness, and that there was unconstitutional wrongdoing that upended her life," the same applies to Detective Smith. He also offended the "gravest notions of fundamental fairness." He is supposed to be the protector of the all the people, including me and is supposed to fairly but zealously enforce the law as well as abide by it. Smith's mendacities affected Judge Skinner's decision and as a result violated Kelly's constitutional right to be free from an unlawful arrest. No one is above the law. Appellant is not alleging that he has been a saint all of his life

but right is right and wrong is wrong. See James 2:9-11 "But if you show partiality you commit sin, and are convicted by the law as transgressors. For whoever shall keep the whole law, and yet stumble in one point, he is guilty of all. For he who said, do not commit adultery, but you do murder, you have become a transgressor of the law." Detective Smith's crooked mendacities carry no less meaning or impact than Prosecutor/Judge Walden "Ralph" Petty Jr.'s "utterly bonkers" crookery. ***Wilson*** at 12.

Since the State court did not want to acknowledge Smith's contradictory statements, at the very least Appellant deserves for this Court to acknowledge and memorialize that the factual basis for Detective Smith's probable cause for DWSLR and arrest, is based on structurally flawed factual allegations, namely Detective Smith's contradictory testimonies and that the District Court's finding that the DWLSR and felony cases are inextricably intertwined is not supported by competent and substantial testimonial evidence because when there are (2) lies neither one can be believed. If this Court finds as such, it should reverse the District Court's finding and reverse the granting of summary judgment for the Defendants and find that Appellant's §1983 can proceed because if the cases are not inextricably intertwined then whether or not the felony convictions would be invalidated is irrelevant.

## ARGUMENT AND CITATIONS OF AUTHORITY

### ii.

**The district court's "Case Management and Scheduling Order" amounted to the Judge abdicating her position on neutrality by giving unsolicited and strategically beneficial legal advice to the Defendant's, where the Judge essentially became an advocate for the defendants**

**Standard of Review:**

"The appellate court reviews the grant or denial of a motion for summary judgment de novo. In so doing, the appellate court draws all inferences and review all evidence in the light most favorable to the non-moving party. The appellate court will affirm if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The presence of cross-motions does not affect the appellate court's standard of review." *Oviedo Town Ctr. 11, L.L.L.P. v. City of Oviedo*, 759 Fed. Appx. 828, 833 (11th Cir. 2018).

**Argument:**

In Appellant's "Declaration In Opposition to Defendant's Motion For Summary Judgment," Appellant objected and moved to strike the Defendant's use of the qualified immunity defense. **(Doc.79 at 11, 12)**.

In the District Court's Case Management and Scheduling Order, box (4), it says "To progress the litigation, the following deadlines shall apply … **File any**

**<u>dispositive motion, including a motion raising qualified immunity</u>** no later than June 13th, 2023." **(Appendix V; Doc.60 at 1).**

In Appellant's view, this statement is the definition of unsolicited and strategically beneficial legal advice to the Defendant. The Defendant's never raised this defense in their Answer to the Complaint under Fed. R. Civ. P. Rule 8(c), which was done prior to the Judge Morales issuing the Case Management and Scheduling Order. The order should have simply said, file any dispositive motion no later than June 13th, 2023. There is a reasonable probability the Defendants did act upon this advice because they did raise the issue of qualified immunity in their motion for summary judgment. **(Doc.67 at 10).**

A judge should be a neutral arbiter and should always have the appearance of impartiality. Appellant doesn't necessarily believe that the Hon. Marcia Morales is bias against him personally. It is possible that the Case Management and Scheduling Order is a standard order that the Middle District uses in all civil cases and it is also possible that the Chief Judge crafted this order. Nevertheless, Defendant believes that the Defendants benefited from being put on notice by the judge about the qualified immunity defense and that the penalty should be that they are disqualified from asserting this defense if this Court agrees that it was prejudicial. Defendant's lawyer Ian Smith is a competent and capable lawyer and he did not need any "tips" or advice to remind him of what affirmative defenses

were available for him to employ. When a Defendant fails to raise an affirmative defense it is waived. By giving Ian Smith a "tip" to raise qualified immunity in a dispositive motion, gave a bar certified lawyer an unfair advantage over a *pro-se* layman. "Trial judges must studiously avoid the appearance of favoring one party in a lawsuit, and suggesting to counsel or a party how to proceed strategically, constitutes a breach of this principle." Torres v. Orlick, 49 Fla. L. Weekly D916 (Fla. 6th DCA 2024) (quoting Shore Mariner Condo. Ass'n v. Antonius, 722 So.2d 247, 248 (Fla. 2nd DCA 1998). ... "A trial judge crosses the line when he becomes an active participant in the adversarial process, i.e., gives "tips" to either side." Torres at ____. (quoting Great Am. Ins. Co. v. 200 Island Blvd. Condo. Ass'n, 153 So.3d 384, 388 (Fla. 3rd DCA 2014). In the Torres trial court, it interjected itself into the proceeding by continuing the matter without any request from the Respondent so that she could procure and file supporting affidavits. The Court asked the respondent, "Why are there no affidavits in this case? ... I tried to stay off in my lane. But there was no affidavit and I usually get an answer to affirmative defenses and an affidavit, so prepare an order that I'm going to continue the hearing on this. You have (10) days to file an affidavit in support of your motion and get it reset for a hearing." Torres at ____. The Sixth District Court of Appeals noted that in the Shore Mariner court, a writ of prohibition was issued because the trial judge suggested that a party amend its pleadings to assert a necessity defense.

*Torres* at _____. See also *Chastine v. Broome*, 629 So.2d 293, 295 (Fla. 4th DCA 1993) ("The trial judge serves as the neutral arbiter in the proceedings and must not enter the fray by giving 'tips' to either side.").

These scenarios are analogous to what occurred in this District Court's "Case Management and Scheduling Order."

Judge Morales did not reach the qualified immunity argument because she dismissed the case based on *Heck*. Nevertheless, Appellant argues that the "tip" violated his due process under the Fourteenth Amendment and if this Court agrees, want this defense to be disqualified.

## ARGUMENT AND CITATIONS OF AUTHORITY

**iii**

**Trial counsel can be added as a defendant under the theory that although he is a private party, not acting under the color of state law, and pursuant to *Spencer*, he may be found liable for a Sixth Amendment violation of ineffective assistance of counsel under *Martinez v. Ryan*, for failing to properly challenge a Fourth Amendment violation.**

**Standard of review:**

"An appellate court reviews de novo a district court's order granting a motion to dismiss. *Moseley v. Lynch*, 2018 U.S. App. LEXIS 30801 at LEXIS 3 (11th Cir. 2018).

In the District Court's order dismissing former trial counsel Gregg Williams as a defendant in this action, the Court acknowledged that Kelly alleged in his amended complaint that former counsel Gregg Williams violated Kelly's Sixth Amendment rights because Williams provided ineffective assistance when he failed to properly challenge Deputy Jett's unlawful extended seizure and Detective Smith's unlawful arrest. (**Doc.55 at 3**).

The District Court also noticed that Kelly acknowledged that Williams was not a state actor. The Court ultimately ruled that Williams must be dismissed because he is not a state actor. (**Doc.55 at 11**). The District Court reasonably relied on the factors enunciated in *Farrow v. West*, 320 F.3d 1235, 1239 n.3 (11th Cir.

2003) to determine if Kelly could establish a sufficient relationship between Gregg Williams and the state.

Kelly argues simply that if he is allowed to collaterally attack his DWLSR conviction under *Spencer, supra*, then none of the existing procedural rules under *Farrow* protecting private actors, (i.e. lawyers) from litigation under §1983 would apply.

Collaterally attacking a conviction normally includes raising claims of ineffective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).

In other words a plaintiff pursuing a §1983 action alleging ineffective assistance of counsel where the Plaintiff is out-of-custody, would fall under a judicially created exception [on the back of *Spencer*] to overcoming the state-actor impediment.

## CONCLUSION

Appellant prays for this Honorable Court to (1) grant this appeal and issue an order reversing the U.S. District Court's order granting summary judgment to the Defendants and denying Appellant's motion for summary judgment; (2) reverse the District Court's decision granting dismissal of Defendant Gregg Williams; (3) explain why Appellant is wrong and where he is wrong.

Signed on this 21st day of May, 2024.

/s/

Colburn C.G. Kelly, Pro Se
D/C # J49515
Marion Correctional Institution
P.O. Box 158
Lowell, FL 32663-0158

## OATH

Appellant declares under penalty of perjury, in accordance with Title 28 U.S.C. §1746, that he has read this initial brief and that the facts stated in it are correct and true.

/s/

Colburn C.G. Kelly, Pro Se
D/C # J49515
Marion Correctional Institution
P.O. Box 158
Lowell, FL 32663-0158

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

*Check the appropriate box in Section 1, and check the box in Section 2.*\

1. **Type-Volume**

✓ This document complies with the word limit of FRAP 32(a)(7)(B)(i) because, excluding the parts of the document exempted by FRAP 32(f), this document contains **7,598** words.

**or**

☐ This brief complies with the line limit of FRAP 32(a)(7)(B)(i) because, excluding the parts of the document exempted by FRAP 32(f), this brief uses a monospaced typeface and contains ______________ lines of text..

2. **Typeface and Type-Style**

✓ This document complies with the typeface requirement of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word® in 14-point *Times New Roman* font.

/s/ ______________________
Colburn C.G. Kelly, Pro Se
D/C # J49515
Marion Correctional Institution
P.O. Box 158
Lowell, FL 32663-0158

# CERTIFICATE OF SERVICE

Pursuant to 11th Cir. R. 31-3, I hereby certify that (4) copies of this Initial Brief and CIP and pursuant to 11th Cir. R. 30-1(d), (2) copies of the Appendix have been placed in the hands of prison officials for delivery via pre-paid First Class U.S. Mail to:

**Eleventh Circuit Court of Appeals**,

56 Forsyth St., N.W., Atlanta, GA 30303-2218;

(4) copies Brief and CIP and (2) copies of Appendix

**Hilyard, Bogan & Palmer**, c/o **Ian Forsythe**, **Esq.**

105 East Robinson St., Suite 201, Orlando, Florida 32801;

(1) copy of Brief and CIP and (1) copy of Appendix;

on this 21st day of May, 2024.

/s/ [signature]

Colburn C.G. Kelly, DC # J49515
Marion Correctional Institution
P.O. Box 158
Lowell, FL 32663-0158

U.S. COURT OF APPEALS
RECEIVED
CLERK
MAY 24 2024
ATLANTA, GA

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

Case No. 24-10553-J

---

**COLBURN C.G. KELLY,**
Appellant,

**v.**

**DEPUTY CODY JETT, et al.,**
Appellee(s)

---

On Appeal from the United States District Court
For the Middle District of Florida
Order Granting Defendant's Motion For Summary Judgment and Denial of
Appellant's Motion For Summary Judgment From
Appellant's Amended §1983 Complaint

---

**APPENDIX**
**INITIAL BRIEF OF APPELLANT**

Colburn C.G. Kelly, *Pro Se*
D/C # J9515
Marion Correctional Institution
P.O. Box 158
Lowell, FL 32663-0158

**U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

***Colburn C.G. Kelly v. Deputy Cody Jett, et al.,*** Appeal No. **21-10868-CC**

11th Cir. R. 26.1 (enclosed) requires that a Certificate of Interested Persons and Corporate Disclosure Statement must be filed by the Appellant with this Court within 14 days after the date the appeal is docketed in this Court, and must be included within the principal brief filed by any party, and included within any petition, answer, motion or response filed by any party. **You may use this form to fulfill this requirement.** In alphabetical order, with one name per line, please list the trial judge(s), and all attorneys, persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

**(Please type or print legibly).**

| | |
|---|---|
| **Collins, R. Timothy** | **3.850 Trial/Post-Conviction Judge (County)** |
| **Duffy, Thomas** | **Assistant Attorney General** |
| | **(Dir Appeal)(Circuit Court)** |
| **Forsythe, Ian** | **Defendant's Counsel** |
| **Jett, Cody, Deputy** | **Defendant** |
| **Lambert, L. Laura** | **District Court Magistrate Judge (§1983)** |
| **Long, Hon.** | **First District Appellate Judge** |
| **Luca, Jonathan, Esq.** | **Felony Trial/Appellate Counsel** |
| **Moody, Ashley** | **Attorney General** |
| **Morales-Howard, M., Hon** | **District Court Judge Jacksonville (§1983)** |
| **Reynolds, E. Damarius** | **Assistant Attorney General** |

| | |
|---|---|
| **Roberts, Hon.** | **First District Appellate Judge (Dir Appeal)** |
| **Rowe, Hon., Lori S.** | **Chief Judge First District** |
| **Skinner, H. John, Hon.** | **Felony Trial Judge** |
| **Smith, John Detective** | **Defendant** |
| **Thomas, B.L., Hon.** | **First District Appellate Judge** |
| **Wetherell, Hon.** | **First District Appeal Judge (Dir Appeal)** |
| **Williams, Gregg, Esq.** | **County Misdemeanor Trial Counsel** |
| **Wolf, Hon. James R.** | **1st Dist Ct of Appeal Judge (9.141/3.850 App)** |
| **Woods, E. Steven, Esq.** | **Assistant Attorney General (Dir Appeal)** |

/s/ ______________________

Colburn C.G. Kelly, DC #J49515
Marion Correctional Institution
P.O. Box 158
Lowell, FL 32663-0158

## CERTIFICATE OF SERVICE

Pursuant to 11th Cir. R. 31-3, I hereby certify that (4) copies of this Initial Brief and CIP and pursuant to 11th Cir. R. 30-1(d), (2) copies of the Appendix have been placed in the hands of prison officials for delivery via pre-paid First Class U.S. Mail to:

**Eleventh Circuit Court of Appeals**,

56 Forsyth St., N.W., Atlanta, GA 30303-2218;

(4) copies of Brief and CIP and (2) copies of Appendix

**Hilyard, Bogan & Palmer**, c/o **Ian Forsythe**, **Esq.**

105 East Robinson St., Suite 201, Orlando, Florida 32801;

(2) copies of Brief and CIP and (1) copy of Appendix;

on this 21st day of May, 2024.

/s/ [signature]

Colburn C.G. Kelly, DC # J49515
Marion Correctional Institution
P.O. Box 158
Lowell, FL 32663-0158

# INDEX of APPENDIX


| APPENDIX | DOCUMENT | DATE |
|---|---|---|
| A | Middle District Docket Sheet (Doc.88-4) | February 22, 2024 |
| B | Det. J. Smith Arrest Affidavit<br>L.T. No. 2015-CT-1348 | August 22, 2015 |
| C | Det. J. Smith Affidavit for<br>Arrest Warrant<br>L.T. No. 2015-CF-1203 | August 26th, 2015 |
| D | Information<br>L.T. No. 2015-CT-1348 | September 1st, 2015 |
| E | Gregg Williams Motion to Suppress<br>L.T. No. 2015-CT-001348 | September 18th, 2015 |
| F | No Contest Plea<br>L.T. No. 2015-CT-1348 | October 5th, 2015 |
| G | Judgment and Sentence<br>L.T. No. 2015-CT-1348 | October 5th, 2015 |
| H | *Pro-Se*; Rule 3.850 Supp. & Amended<br>Motion for PCR;<br>L.T. No. 2015-CT-1348 | September 14th, 2017 |
| I | Rule 3.850 Evidentiary Hearing<br>L.T. No. 2015-CT-1348 | March 22nd, 2018 |
| J | *Pro-Se*; Amended Memorandum of Law<br>L.T. No. 2015-CT-1348 | August 17th, 2020 |

| | | |
|---|---|---|
| K | Rule 3.850 Denial Order<br>L.T. No. 2015-CT-1348 | June 24th, 2020 |
| L | Rule 3.850 Rehearing<br>Rehearing Denial Order<br>L.T. No. 2015-CT-1348 | August 17th, 2020<br>September 18th, 2020 |
| M | First District Court of Appeal<br>PCA Case No. 1D21-107<br>L.T. No. 2015-CT-1348 | November 12th, 2021 |
| N | Order Reconstructing 3.850 Exhibits<br>L.T. No. 2015-CT-1348 | March 31st, 2020 |
| O | Hon. Marcia Morales Order Granting<br>Summary Judgment for Defendants<br>And Denying Summary Judgment for<br>Plaintiff and Dismissing §1983 (**Doc. 81**) | January 18th, 2024 |
| P | Motion to Suppress Evidentiary Hearing<br>2015-CT-1348 | October 5th, 2015 |
| Q | Amended Complaint (**Doc. 30**) | July 30th, 2021 |
| R | Motion to Dismiss Amended Complaint<br>(**Doc. 34**) Cody Jett, Jonathan Smith | October 19th, 2021 |
| S | Motion to Dismiss Amended Complaint<br>(**Doc. 50**) Gregg Williams, Esq. | December 20th, 2021 |
| T | Response to Motion to Dismiss<br>Amended Complaint (**Doc. 53**)<br>Cody Jett, Jonathan Smith | April 13th, 2022 |
| U | Response to Motion to Dismiss<br>(**Doc. 54**) Gregg Williams, Esq. | April 13th, 2022 |

| | | |
|---|---|---|
| V | Case Management and Scheduling Order **(Doc. 60)** | January 17th, 2023 |
| W | Defendant's C. Jett and J. Smith Motion to Dismiss Plaintiff's Amended Complaint **(Doc. 34)** | October 19th, 2021 |
| X | Defendant Gregg Williams Motion to Dismiss Plaintiff's Amended Complaint **(Doc. 50)** | February 16th, 2024 |
| Y | Plaintiff's Reply to Defendant G. Williams And Adopting Previous Arguments in Plaintiff's Initial Reply to G. Williams Initial Motion to Dismiss **(Doc. 54)** | April 4th, 2022 |
| Z | Plaintiff's Response to Defendant's C. Jett & J. Smith's Amended Motion to Dismiss **(Doc. 53)** | April 4th, 2022 |

024

pecified for do
s include up to
for domestic a
rance.**
, a customs d

Retail

UNITED STATES POSTAL SERVICE®

30303

RDC 03 6 Lb 0.60 Oz

U.S. POSTAGE PAID
PM
LOWELL, FL 32663
MAY 22, 2024

$1.40

R2305E125334-01

FROM: Colburn Kelly
DC # J49515
Marion Correctional Institution
P.O. Box 158
Lowell, Florida 32663

tems. For details regarding claims
Manual at http://pe.usps.com.
ht

EXPECTED DELIVERY DAY: 05/24/24

USPS TRACKING® #

9505 5134 5661 4143 3375 91

Retail

18.40 total

TO: Eleventh Circuit Court of Appeals
56 Forsyth St. N.W.
Atlanta, Georgia 30303

up,

MAILED FROM A STATE CORRECTIONAL INSTITUTION

CLEARED SECURITY

M 24

U.S. MARSHALS SERVICE
Atlanta, GA

INSURED